UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 25-cr-162 (BAH) |
| KEITH MOORE, | |
| Defendant. | |

### UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Keith Moore (hereafter, the "defendant") be detained pending trial under 18 U.S.C. §§ 3142(f)(1)(E) (felony involving a firearm) and that he be detained temporarily under 18 U.S.C. § 3142(d)(1)(A)(iii) (on supervision for any offense).

While on supervision for his conviction for a violent offense, Assault with Significant Bodily Injury, as well as Felony Contempt, the defendant chose to possess a loaded firearm. Considering the factors under 18 U.S.C. § 3142(g), no conditions or combination of conditions short of detention will ensure the safety of the community. The defendant should therefore be detained pending trial. In support of this motion, the United States requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

I.    FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 2024, at around 5:50 p.m., officers of the Metropolitan Police Department ("MPD") were on patrol in the 5300 block of Queens Stroll Place SE when they saw an illegally

parked gray Ford Focus with Virginia tags[1] ("the vehicle"), which was blocking a fire hydrant. A group of people were standing nearby, and law enforcement exited their vehicles to try and identify the owner of the illegally parked car. The group scattered – including the defendant, who was seen walking away from the driver's side area of the vehicle, and Shenay Markham, who was seen opening the front passenger door and leaning into the vehicle before shutting the door and walking away. One of the officers asked Ms. Markham if she knew whose car it was, noting that it was illegally parked, and she denied any knowledge before continuing to walk away from the vehicle down the street.

One of the officers looked into the driver's side window of the vehicle and almost immediately saw the butt, or handle, of a firearm. After seeing the firearm, she alerted the other law enforcement officers to the presence of the firearm. Figures A – B below show the firearm, which was sitting on the driver's side seat and partially obscured by a gray rag or cloth, before it was recovered by law enforcement:



*Figure A: photograph of firearm on driver's seat (taken from above)*

---

[1] Records check indicate that the vehicle was registered to a third person (not the defendant or Ms. Markham).



*Figure B: photograph of firearm before recovery*

On the passenger seat of the vehicle, law enforcement also recovered a cellphone, which had a picture of Moore saved on the lockscreen. The recovered firearm was a loaded Smith and Wesson M&P Shield 9mm, bearing serial number NKH6196, with eight rounds in the magazine. Figure C below includes images of the firearm after processing, along with the ammunition:



*Figure C: Smith and Wesson M&P Shield 9mm and eight rounds of 9mm ammunition*

After discovering the firearm, law enforcement detained the defendant, who had been seen at the driver's side of the vehicle, and Ms. Markham, who had been seen at the passenger's side. From Ms. Markham, law enforcement recovered a small amount of a white substance that field-tested positive for fentanyl. From the nearby area where the defendant had been seen after he walked away from the vehicle, law enforcement recovered a plastic bag of a white substance that field-tested positive for cocaine base (and that was later confirmed by laboratory analysis as approximately 5.6 grams of cocaine base). On scene, the defendant made a number of inconsistent statements, denying any association with the vehicle until officers recovered a phone with his photograph displayed as the lockscreen image, at which point he said he had been riding in the car.

Neither the defendant nor Ms. Markham were charged at the time. Buccal warrants were obtained from both, which were submitted for DNA testing and comparison with swabs from the firearm. As shown in Figure D below, DNA testing results show strong support for the defendant's inclusion and Ms. Markham's exclusion on the firearm:[2]

| Person of Interest (POI) | Likelihood Ratio (LR)[2] | Level of Support[3] |
|---|---|---|
| MOORE | $5.2 \times 10^{19}$ (52 quintillion) | Very Strong Support for **Inclusion** |

The DNA results from item 1 are 40 times more likely if three unknown, unrelated people are contributors than if MARKHAM and two unknown, unrelated people are contributors.

| Person of Interest (POI) | 1/Likelihood Ratio (1/LR)[2] | Level of Support[3] |
|---|---|---|
| MARKHAM | 40 | Limited Support for **Exclusion** |

*Figure D: excerpt of DNA results for recovered firearm*

After DNA results confirmed the defendant's possession of the firearm, the defendant was charged by indictment with Unlawful Possession of a Firearm and Ammunition by a Person

---
[2] No DNA or sex typing results were obtained from the magazine; as a result, no comparisons could be made.

4

Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). An arrest warrant was issued on June 4, 2025, which remained outstanding until the defendant's arrest by the United States Marshal Service ("USMS") on August 15, 2025. At the defendant's initial appearance on August 18, 2025 before the Honorable Moxila A. Upadhyaya, the United States sought the defendant's detention pending trial pursuant to the above-referenced provisions of the federal bail statute. The Court set the defendant's detention hearing for August 20, 2025.

## II.     Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id.*; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210; *see also Williams*, 798 F. Supp. at 36.

Under Section 3142(g), the Court must analyze four factors in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case

require the Court to conclude that there is no condition or combination of conditions that would assure appearance of the defendant in court or the safety of the community were he to be released. *See* 18 U.S.C. § 3142(e)(1).

### A. The Nature and Circumstances of the Offense Charged Merit Detention

The United States respectfully submits that the nature and circumstances of the offense charged here weigh in favor of detention. This is especially true given that the circumstances involve the defendant's possession of a loaded firearm out in the community – not in a residence or private location. The defendant's decision to drive around with a loaded firearm was an intentional one, and one that should give the Court pause regarding his intention. Nor was the firearm recovered from a trunk, or even a glove box, or some other marginally secured location where it was not easily accessible. Rather, the defendant ensured that the gun was sitting on the driver's seat, in plain view and within easy reach.

The Court has warned against discounting the inherent danger associated with loaded firearms. "Illegally possessing a fully loaded concealed firearm with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community." *United States v. Blackson*, 2023 WL 1778194, at *7. This Court routinely finds that just one such gun poses a danger to the community, *see United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public), especially a firearm loaded with a round in the chameber. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because

"the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling.").

The defendant's decision to drive around in the community with a loaded firearm was not a casual one. Moreover, he ensured that the firearm was literally at his fingertips – in plain view lying on the driver's seat. As a result, the nature and circumstances of the defendant's offenses weighs in favor of detention.

**B.    The Weight of the Evidence Against Defendant also Favors Detention**

The evidence against the defendant weighs in favor of detention. Given that he was on supervised release for a violent crime for which he received more than a year of imprisonment and that he had previously been convicted in two separate cases of other violent crimes, including Robbery while Armed, there can be little doubt that the defendant knew he was prohibited from possessing a firearm and ammunition on October 9, 2024. The nexus between the defendant and the firearm is also quite strong, given that he was seen by law enforcement at the driver's side of the vehicle (where the gun was recovered) and that he admitted to having been in the vehicle after law enforcement located a phone inside with his photograph as the lockscreen image. Although Ms. Markham clearly also had access to the vehicle, the DNA evidence very strongly supports the defendant's inclusion as a contributor to the DNA taken from the firearm (and her exclusion). In its totality, the evidence against the defendant supports his detention.

**C.    The Defendant's History and Characteristics**

The defendant's history and characteristics, perhaps more than any other factor, weighs heavily in support of his detention. At the age of 38, the defendant has amassed an extensive and serious criminal history probative of his willingness and capacity to use firearms to endanger others and the community, to inflict physical harm upon others, and to disregard court order and

7

conditions of release. This history appears to span the last 20 years and the defendant's entire adult life.

His first adult conviction was for Armed Robbery in 2005 FEL 0019. Although the Superior Court docket is less than clear, it appears that he was released pending trial to a halfway house before absconding on September 1, 2005. He was in escape status for months before being apprehended. He was charged with Prisoner Escape in 2006 CF2 18864 and pled guilty in both cases. He then appears to have failed to appear for sentencing on June 1, 2007. He was apprehended again on August 31, 2007 and charged with violating the Bail Reform Act (felony) in 2007 CF2 20554. He was sentenced in all three cases on the same day, receiving 40 months of imprisonment in 2005 FEL 19, one month of imprisonment in 2006 CF2 18864, and one month of imprisonment in 2007 (to be served consecutively). According to the Pretrial Services Agency Report ("PSR") [ECF No. 8], his supervised release was revoked to incarceration on January 31, 2023.

In 2008 CF3 3594, he was charged with Armed Robbery, Possession of a Firearm during a Crime of Violence, Carrying a Pistol without a License Outside the Home, and Unlawful Possession of a Firearm. After a jury trial that resulted in a hung verdict, he pled guilty to four misdemeanors and was subsequently sentenced to 180 days of imprisonment on each count (to be consecutively to one another). Although there does not appear to have been a statement of facts filed in support of the guilty plea, the affidavit in support of the arrest warrant sets forth an incredibly troubling set of facts. *See* Exhibit A. According to the affidavit, the defendant committed an armed robbery of a citizen and then committed a *second* armed robbery of a postal worker who witnessed the first robbery and was trying to call the police. According to the PSR, he was released in April 2011. Just two months later, he was arrested again and charged with (and

8

pled guilty to) Armed Robbery in 2011 CF3 11041. The Statement of Facts filed in support of the guilty plea again details troubling facts of the defendant's conduct, including that he put a gun to the head of the victim. *See* Exhibit B. He was sentenced on July 17, 2015 and received 72 months of incarceration.

His most recent conviction may be the most troubling. In 2019 CF2 29457, he was convicted of Assault with Significant Bodily Injury and Felony Contempt. According to the police paperwork and Statement of Facts filed in support of his guilty plea, after a fender bender with another individual, the defendant apparently became so enraged that he struck the other party in the face, causing him to drop to the ground and momentarily lose consciousness. *See* Exhibit C. Nor does it appear that the presence of law enforcement in the area – close enough to have witnessed the assault and captured it on bodyworn camera – appear to have deterred the defendant from his violent conduct. Then the defendant went even further – while detained pending trial, he contacted the victim from jail, in direct violation of court order, in an apparent attempt to obstruct justice by discouraging him from participating in the court case.

In sum, the defendant has demonstrated a twenty-year pattern of violent, assaultive conduct – often involving guns – that also demonstrates a history of failing to comply with the law, court order, and conditions of supervision. He has at least twice failed to appear, violated his conditions of supervision, and actually contacted the victim of a violent crime in direct contravention of a court order to deter prosecution. The Court can therefore have no confidence that the defendant will behave any differently if release conditions are imposed in the instant matter in lieu of detention.

    D.    **<u>Danger to the Community</u>**

The nature and seriousness of the danger to any person or the community that the

defendant's release poses also strongly supports pretrial detention. He has repeatedly persisted in possessing a weapon designed to kill and maim, notwithstanding having every incentive to not reoffend based on his prior encounters with the criminal justice system. The fact that many of his prior convictions involve violent conduct or firearms – or both – demonstrates a level of dangerousness that cannot be mitigated by less restrictive conditions or combinations thereof. *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence). This factor, as with the three other factors, weighs in favor of pretrial detention.

### III. Conclusion

The defendant has repeatedly shown that he is unwilling to comply with the law, court orders, and his terms of supervision while in the community. There is no reason to believe that any condition or combination of conditions of release that would reasonably assure the safety of the community or the defendant's return to court. The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: */s/ Andrea Duvall*
ANDREA DUVALL
Assistant United States Attorney
District of Columbia
AR Bar No. 2013114
601 D Street, NW
Washington, DC 20530
(202) 252-2408
andrea.duvall@usdoj.gov